UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TIMOTHY MANNING and JOSEPH BRYSON )<br>　　　Plaintiff,　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>v.　　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>MASSACHUSETTS OFFICE OF CHIEF　　 )<br>MEDICAL EXAMINER, JOHN CRONIN, and )<br>RICHARD EVANS,　　　　　　　　　　 )<br>　　　Defendants.　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　 ) | C.A. NO. 04-10508 DPW |

## ANSWER

The defendants MASSACHUSETTS OFFICE OF THE CHIEF MEDICAL EXAMINER, JOHN CRONIN, AND CHIEF MEDICAL EXAMINER DR. RICHARD EVANS ("defendants") responds to the Complaint for Relief of plaintiffs TIMOTHY MANNING AND JOSEPH BRYSON ("plaintiffs) by correspondingly numbered paragraphs as follows:

### INTRODUCTION

1.   Admitted that the complaint sounds in two counts: alleged violations of G.L. c. 149, § 185, and alleged violations of the First Amendment to the United States Constitution.

### JURISDICTION

2.   Admitted.

### PARTIES

3.   The defendants are without knowledge or information sufficient to form a belief

1

as to the truth of the allegations contained in this paragraph.

4. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

5. Admitted.

6. Admitted.

7. Admitted.

8. Defendants deny that Manning was promoted to Chief Financial Officer for the Office of the Chief Medical Examiner ("OCME"). As for the remaining allegations, the defendants are without knowledge or information sufficient to form a belief as to whether they are true or not.

9. Defendants answer that the core mission of the OCME is funded through state funds, and that it uses federal grants for specific projects, such as grief counseling and mass disasters.

10. Again, Manning was not the Chief Financial Officer, he was an Accounting IV officer, so this paragraph is denied.

11. The defendants deny that there were any financial irregularities in the OCME. And they further deny that federal grant funds were being wrongly used to pay salaries of staff members "seemingly" in violation of federal law. And further answering, the defendants state that Mr. Manning's "concerns", some six years ago, regarding toxicology service contracts with the University of Massachusetts Medical School were unfounded. Indeed, until September of Fiscal year 1997 the OCME relied on the State Police to perform toxicological services. But discussions with the State Police indicated that they would no longer be performing these

necessary services. The Legislature provided budgetary support for the University of Massachusetts' Medical School to now perform the toxicological services. As for Mr. Manning's concerns regarding S.U.V.s, these, too, were unfounded. The S.U.V.s were not luxury vehicles, but vehicles designated for use by medical examiners in the OCME's offices. As such, they were equipped to allow the medical examiners to travel through a variety of terrains to get to the corpses. That these vehicles were funded by a federal mass disaster grant illustrates their purpose.

12. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

13. The defendants answer that Mr. Hayden has a vague memory of meeting with someone who may well have been the plaintiffs, but the time frame is uncertain.

14. The defendants answer that Mr. Hayden recalls a complaint about S.U.V.s, but does not recall any mention of bathroom supplies.

15. The defendants answer that Mr. Hayden has a vague recollection of this, but this recollection may have come from a newspaper article.

16. Admitted that after Dr. Evans reported that several thousand dollars was missing from OCME Crime Scenes Investigations, the State Police conducted an investigation, which determined that a desperately ill OCME staffer, seeking funds for an operation, took the money. The money was repaid and the staffer resigned. Mr. Hayden denies being told this.

17. The defendants deny that the individuals named were inexperienced, or that there even were civil service exams for the management positions. And further answering that Mr. Hayden does not recall this.

18. It is denied that any "exchange" occurred. And further answering that Fairbanks,

at some point, received a salary increase when his salary "collided" with that of someone he oversaw. Simply put, when a supervisor's salary is less than that of his or her subordinate, the supervisor's salary is raised accordingly. And the tuition vouchers mentioned were issued appropriately. And finally answering that Mr. Hayden has no recollection of this.

19. The defendants deny that any staff photographer used the snow plow for personal use. And further answering that Mr. Hayden states that he does not remember this.

20. The defendants deny that the Home Deport Credit Line was used by unauthorized individuals. And further answering that Mr. Hayden states that he does not remember this.

21. As noted above in paragraph 11, the State Police indicated to the OCME that they would no longer be performing toxicological services. And further answering that the University of Massachusetts Medical School indicated an interest in performing the toxicological services. The Legislature provided for this. And further answering that Mr. Hayden states he does not remember this.

22. The defendants answer that Manning's concerns regarding Tissue Bank International and its local subsidiaries were unfounded. The OCME and Tissue Bank International and the local Tissue Bank entities have been involved in an award winning program since 1996. And, further answering, Tissue Bank employees who assisted the OCME with administrative duties never contacted potential donor families to request donations. Mr. Hayden states that he remembers being made aware of this issue, but that he has no specific memory of Mr. Manning telling him this.

23. As for Manning's beliefs, the defendants cannot answer. But they do deny that Tissue Bank staffers at the OCME confused families - they never contacted families. And there

were no complaints from law enforcement or doctors regarding these allegations. And, further answering, Tissue Bank International and the local tissue bank entities the OCME works with are non profit organizations, which provide donations to Shriner's Burn Institute, among others. And, finally answering, Mr. Hayden recalls being made aware of the issue, but he thinks it may have been from the newspaper.

24.     Denied.

25.     Defendants answer that Mr. Hayden states that he believes he did tell someone, who may have been Manning, to inform the Attorney General's Office, and that he may have stated something about the individual and being a whistle blower, or whistle blower status.

26.     Admitted that at some point Susan Prosnitz met with Manning, and that she contacted the Attorney General's Office. And, further answering, that the incident described never happened, and thus, is denied.

27.     The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

28.     Denied that, if alleged, the defendants caused Manning's work situation to become strained and stressful. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

29.     Admitted that St.Louis resigned in 1999, but it is denied that he was fired. The defendants are without knowledge or information sufficient to form a belief as to the truth of whether St. Louis formed Crest Associates in 1998. Admitted that St. Louis hired people from state public safety agencies. As for the remaining allegations, the defendants are without knowledge or information sufficient to form a belief as to these.

30. Admitted.

31. Denied.

32. Denied.

33. Admitted that in May 2000 Manning was hospitalized and diagnosed with a heart condition. Further admitted that he then took a two year medical leave.

34. Denied.

35. Admitted that Bryson was hired as a morgue technician. And, further answering, that after being out for months on worker's compensation, he returned able to do only light duty, and thus he became an Administrative Assistant.

36. The defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

37. The defendants deny that there were any illegalities, they do not have any knowledge or information sufficient to form a belief as to what Bryson may have "perceived." And, further answering, that contrary to Bryson's "perception" Tissue Bank International, a non-profit organization committed to the goal of appropriate organ donation, began an award winning program with the OCME. The duties of any Tissue Bank employee at the OCME did not include contacting any family members to request organ donation. And, also answering, that defendants are aware of a single unfortunate incident that occurred several years ago in which a family was contacted prior to being notified of the death, but this did not occur at the OCME.

38. The defendants are without knowledge or information sufficient to form a belief as to the truth of Manning's "views". It is admitted that Manning contacted Dr. Evans regarding his salary and his duties.

39.     Admitted that Mr. Cronin become Chief Administrative Officer of the OCM after being appointed by the Secretary, and that Dr. Evans conferred signatory authority on Mr. Cronin. It is denied that Mr.Cronin was closely allied with Richard St. Louis. It is also denied that Crest Associates had several contracts managing federal grants at the OCME. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Crest Associates had contracts with other public safety agencies. It is denied that Mr. Cronin was aware that Mr. Manning alleged improprieties regarding Mr. St. Louis and Crest Associates.

40.     Admitted that Mr. Cronin talked to Manning and others regarding their duties. Mannings duties remained the same.

41.     It is admitted that there is an April 17th memorandum that speaks for itself. The remaining allegations are denied.

42.     Admitted that Mr. Cronin, because of an administrative consolidation of the Secretariat submitted by the Governor and approved by the Legislature, submitted the contractually required lay-off list to N.A.G.E. And, further answering, that the lay off did not occur because the legislative language to share monetary resources necessary for the consolidation was lacking.

43.     Admitted that Manning, Bryson, Cronin, and Faherty met for three hours on May 14, 2003. It is denied that alleged OCME financial problems or federal grants were discussed at this meeting. And, further answering, the subject of the meeting was primarily Manning's complaints about his job: that he was being treated poorly, that his stuff was being moved around, that the Executive Office of Public Safety was putting people, specifically St. Louis in the OCME, and he mentioned that he had whistle blower protection conferred by the Attorney

General's office. During the meeting Ms. Faherty requested clarification of just what Manning meant by the whistle blower comment. It is denied that Mr. Cronin was upset.

44.     Denied.

45.     Denied that there was any talk of financial improprieties or federal grants. Admitted that Manning complained of the Executive Office of Public Safety placing people in the OCME.

46.     Denied.

47.     Denied. But, further answering, that some time later Bryson sent an email asking about layoffs to which Cronin replied that they were still on the table.

48.     Denied.

49.     Denied as to any allegations that plaintiffs were targeted. Admitted that as a result of the administrative consolidation of the Secretariat: the administrative functions of all agencies within the Secretariat which included OCME would be performed by either the State Police or the Department of Correction, thus, the administrative positions were eliminated. Denied that Manning's work continues to be performed by another OCME employee.

50.     Admitted that Bryson's position was eliminated, as were all Administrative Assistant I positions, in anticipation of the introduction of Administrative Assistant II positions that would provide flexibility with agency staffing.

51.     Admitted that, for the time being, some of the duties Bryson performed are being performed by temporary employees. It is denied that all of them are.

52.     Denied.

53.     Admitted that, as a matter of business practice, Mr. Cronin had the hard drives

removed from plaintiffs' computers. And, it is admitted that the plaintiffs presented themselves as risks. The remaining allegations are denied.

## COUNT I
## (M.G.L. c. 149, § 185)
## Defendant Office of the Chief Medical Examiner

The defendant repeats and realleges its responses to the foregoing

54. Denied.

55. Denied.

56. Denied.

## COUNT II
## 42 U.S.C. § 1983 (First Amendment)
## Defendants John Cronin, Richard Evans, and OCME

The defendants repeat and reallege their responses to the foregoing

57. Denied.

58. Admitted that there has been press coverage and a hearing regarding the OCME's operations. The defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

59. Denied.

60. Admitted.

61. Denied.

## DAMAGES

62. Denied

` **AFFIRMATIVE DEFENSES**

9

Furthering answering, defendants assert the following defenses:

### FIRST DEFENSE

Plaintiffs fail to satisfy the notice requirements of M.G..L. c. 149, § 185.

### SECOND DEFENSE

The acts complained of by the plaintiffs are not acts protected under M.G.L. c. 149, § 185.

### THIRD DEFENSE

The individual defendants are entitled to qualified immunity.

### FOURTH DEFENSE

Plaintiffs' complaint fails to state a claim upon which relief may be granted.

### FIFTH DEFENSE

This court lacks jurisdiction of the subject matter of the complaint.

### SIXTH DEFENSE

The Plaintiffs did not file their complaint within the requisite statute of limitations.

### SEVENTH DEFENSE

Plaintiffs are estopped from pursuing their complaints here as they have already presented the issues in a collateral forum.

        Respectfully Submitted,
        COMMONWEALTH OF MASSACHUSETTS

        By its Attorneys,

        THOMAS F. REILLY
        ATTORNEY GENERAL


        _____
        Mary O'Neil, BBO #379430
        Assistant Attorney General
        Government Bureau/Trial Division
        200 Portland Street
        Boston, MA 02114
        (617) 727-2200 x 3332

Date: May 17, 2004